IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02768-WJM-STV

STATE OF COLORADO and SECRETARY OF STATE JENA GRISWOLD

      Plaintiffs,

v.

LOUIS DEJOY, in his official capacity as Postmaster General;
UNITED STATES POSTAL SERVICE;
SAMARN S. REED, in his official capacity as the Denver, Colorado Postmaster; and
CHRIS J. YAZZIE, in his official capacity as the Albuquerque, New Mexico
Postmaster,

      Defendants.

---

## MOTION FOR A TEMPORARY RESTRAINING ORDER

Defendants are in the process of delivering official notices to households across Colorado that contain false statements about voting in Colorado. Because delivering these notices will violate the Constitution and federal law, cause eligible Colorado voters not to vote in the upcoming election, and harm Colorado and its residents, Plaintiffs request an immediate Temporary Restraining Order preventing Defendants from delivering these Notices to any Colorado household.

### BACKGROUND

On September 10, 2020, reports that the United States Postal Service is sending official notices entitled, "If you plan to vote by mail, plan ahead" ("Notices") to households across the country began trickling-in to state and local election

officials' offices. Choate Dec. ¶ 20.  After a highly expedited investigation, the State of Colorado and Secretary of State Jena Griswold (collectively, "Colorado"), confirmed that the Postal Service intends to send the same Notices, which contain inaccurate, false, and misleading statements about the process and deadline by which registered electors obtain and return mail ballots, to hundreds of thousands of Colorado households. Choate Dec. ¶¶ 24–28. To avoid the resulting voter confusion and mass disenfranchisement of its registered electors—who in the coming weeks will cast their votes for a slew of state and federal offices, including the next President of the United States—Colorado respectfully requests that this Court temporarily restrain the Postal Service and its agents from delivering such Notices to any Colorado household.

Plaintiffs reached out to counsel for Defendants on the evening of September 11 seeking a binding commitment that delivery would be halted. Because that commitment was not given, Plaintiffs filed suit and seek this Temporary Restraining Order.

## LEGAL STANDARD

To obtain a temporary restraining order under Fed. R. Civ. P. 65(b)(1), a plaintiff must show "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party;

and (4) that the injunction, if issued, will not adversely affect the public interest."
*Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1281
(10th Cir. 2016) (quotation omitted); *see also Martin / Martin, Inc. v. Kling Stubbins,*
*Inc.*, No. 19-cv-1233-RM-KLM, 2019 WL 2357303, at *1 (D. Colo. June 4, 2019)
("motion for temporary restraining order is examined under same standards
applicable to requests for preliminary injunction"). The balance of the harms and
public interest factors merge when the government is a party. *See Nken v. Holder*,
556 U.S. 418, 435 (2009). The purpose of preliminary injunctive relief is "to preserve
the relative positions of the parties until a trial on the merits can be held." *Univ. of*
*Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

## ARGUMENT

### I.   Colorado has a substantial likelihood of prevailing on the merits.

Because Defendants' distribution of the Notices violates the Constitutional
rights of Colorado and its residents and two different federal statutes, Colorado has
a substantial likelihood of prevailing on the merits.

### A.   The Notices' false statements significantly interfere with Colorado's constitutional authority to administer elections.

The Notices infringe on Colorado's constitutional powers to administer the
time, place, and manner of state and federal elections. Colorado has exercised its
right to select the time, place, and manner of voting by using a mail voting system.

In 2013, Colorado passed the Voter Access and Modernized Elections Act, 2013 Sess. Laws 681, under which all registered voters are sent a mail ballot. Choate Dec. ¶¶ 4, 6. The reliability and effectiveness of Colorado's mail voting system is an important reason why Colorado consistently has one of the highest voter turnout rates in the country. But by disseminating false and misleading information, the Notices jeopardize Colorado's constitutional right to oversee elections and to appoint presidential electors and Colorado citizens' constitutional right to vote.

States have broad constitutional authority to determine how voting is conducted in state and federal elections. Article I, section 4, clause 1 of the United States Constitution—the "Elections Clause"—allocates to States the sole authority to determine the "Times, Places and Manner of holding Elections for Senators and Representatives," subject to the supervisory power of Congress to "make or alter such Regulations[.]" This power is "comprehensive" and

> embrace[s] authority to provide a complete code for congressional elections, not only as to times and places, but in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns, in short, to enact the numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved.

*Smiley v. Holm*, 285 U.S. 355, 366 (1932); *see also Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986) (Elections Clause "grants to the States a broad power to prescribe" the procedural mechanisms for holding congressional elections).

4

By providing false information about the manner of Colorado's elections—
stating that voters must request a ballot 15 days prior to the election and
recommending that voters mail a ballot 7 days before Election Day—Defendants
interfere with the "Times, Places and Manner of holding Elections" which the
Constitution allocates to Colorado, not the Postal Service.  Compl. ¶ 19.  The Postal
Service statements are incorrect in several material ways: Colorado voters do not
need to request a ballot at any time; if a ballot is lost for whatever reason, a
Colorado voter can request a replacement ballot at any time or vote in person; and
voters need not use the mail to return their ballots as they may vote in person or
place them in drop boxes.  Compl. ¶¶ 6–7.  Defendants' false statements violate
Colorado's constitutional rights to establishing the "Times, Places and Manner of
holding Elections."

### B.   Defendants' misrepresentations to Colorado voters concerning the upcoming election violates the Tenth Amendment.

The Tenth Amendment grants the States the authority to administer
elections.  U.S. Const., amend. X; *Gregory v. Ashcroft*, 501 U.S. 452, 461–62 (1991)
("[T]he Framers of the Constitution intended the States to keep for themselves, as
provided in the Tenth Amendment, the power to regulate elections[.]") (citation and
internal quotation marks omitted).  States have a "compelling" sovereign interest in
protecting against "voter confusion . . . and even frustration of the democratic
process at the general election," and in ensuring that their voters who attempt to

cast ballots in accordance with state law have their votes counted. *Am. Party of Tex. v. White*, 415 U.S. 767, 782 n.14, 786 (1974) (quotation omitted).  As described directly above, Defendants' misstatements as to how voting in Colorado functions impermissibly interferes with Colorado's express and reserved power to regulate election, and thereby violates the Tenth Amendment.  *See also* Compl. ¶¶ 22–28.

### C.   The misleading information in the Notices violates Colorado citizens' right to vote.

The misinformation in the Notices also significantly interfere with the rights of Colorado's citizens to vote. The right to vote is "fundamental," *Tashijian*, 479 U.S. at 217, and "preservative of all rights," *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). *See also Hadley v. Junior Coll. Dist. of Metro, Kansas City, Mo.*, 397 U.S. 50, 56 (1970) (holding that equal protection "requires that each qualified voter must be given an equal opportunity to participate in that election[.]").  Defendants' actions will interfere with the right to vote because they will result in confusion among voters. Although Colorado automatically mails each registered voter a ballot, the Notices falsely represent that voters must request one. Choate Dec. ¶ 29.

Specifically, Defendants' instruction to Colorado voters to "Request your mail-in ballot (often called absentee ballot) at least 15 days before Election Day" is incorrect and will cause Colorado voters to wrongly believe they must request a ballot in order to participate in this election.  Choate Dec. ¶¶ 29–31.  And the Notices fail to make clear that a Colorado voter who receives a ballot in the mail

may deposit that ballot at a drop box or may choose to vote in person up to and including election day. Compl. ¶ 7. Voters who do not receive a ballot due to typical mishandling or errors in the mail or who misplace the ballot they receive will wrongly believe that because they did not request a ballot at least 15 days before the election they cannot vote in this election. Compl. ¶ 6. In fact, Colorado voters can vote in person at election day and request a replacement ballot at any time prior to the election. The Notices will also confuse military and overseas voters who automatically receive ballots and need not request one from the State. Choate Dec. ¶ 33. Defendants' false statements will prevent eligible Colorado voters from participating in this election. In addition, this incorrect instruction will result in a significant increase in questions posed to Colorado election officials by voters, taking time away from administering the election and unnecessarily burdening Colorado's election officials. Choate Dec. ¶ 35.

### D. Defendants' false statements violate 52 U.S.C. § 10101(b).

Defendants' untrue statements about Colorado election law violate section 10101(b) by intimidating, coercing, attempting to intimidate, and/or attempting to coerce Colorado voters not to vote in the upcoming election. 52 U.S.C. § 10101(b) states "No person, whether acting under color of law or otherwise, shall intimidate, threaten, coerce, or attempt to intimidate, threaten, or coerce any other person for the purpose of interfering with the right of such other person to vote or to vote as he

7

may choose, or of causing such other person to vote for, or not to vote for, any candidate[.]"  52 U.S.C., §20510(b) provides a private right of action to any person "aggrieved by a violation of [Chapter 52 of the US Code]."  52 U.S.C., §20510(b), which provides a private right of action to any person "aggrieved by a violation of [Chapter 52 of the US Code]."[1]

Some Colorado voters who would otherwise vote under the guidance of Colorado election officials will be confused by the false statements by the Postal Service and will not vote in the upcoming elections because 1) they falsely believe they must request a ballot to participate; 2) they wrongly think that if they did not receive a ballot they may not vote because they did not request one 15 days prior to the election; or 3) they erroneously believe that they must mail their ballot back 7 days prior to the election when, in fact, they can vote in person on election day and, throughout the state, deliver their ballot to a drop box without using the Postal Service.  Compl. ¶¶ 6–7.  Defendants' actions therefore violate 52 U.S.C. §10101 and Colorado and the Secretary have authority to stop this violation.

---

[1] 52 U.S.C., §20510(a)&(b) provide that where a violation occurs within 120 days of a federal election, before filing a lawsuit, an aggrieved person must wait 20 days after providing "written notice of the violation to the chief election official of the State involved[.]"  But the notice period should not apply here where the aggrieved person is the chief election official of the State and the persons who allegedly are interfering with the right to vote are federal officials. Further, the notice period is nonsensical here where the State official is endeavoring to protect the State and its voters from imminent harm.

**E.      Defendants distribution of the Notices violates the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20302.**

The Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20302 ("the Overseas Voting Act") guarantees absent uniformed services voters and overseas voters the right to vote by absentee ballot in general, special, primary, and runoff elections for federal office. 52 U.S.C. § 20302(a)(1). Secretary Griswold is "responsible for implementing . . . the state's responsibilities under the federal 'Uniformed and Overseas Citizens Absentee Voting Act', 52 U.S.C. sec. 20301 et seq." Colo. Rev. Stat. § 1-8.3-104(1). Among other things, the Overseas Voting Act permits uniformed and overseas voters to vote by absentee ballot and to receive and return their ballots by electronic means. 52 U.S.C. § 20302(e); C.R.S. § 1-8.3-113.

The Notices will cause confusion and potential disenfranchisement of voters who seek to vote under Overseas Voting Act. Some Colorado voters who are absent uniformed services voters and overseas voters and who would otherwise vote under the guidance of Colorado election officials will be confused by the false statements by the Postal Service and will not vote in the upcoming elections because 1) they falsely believe they must request a ballot to participate; 2) they wrongly think that if they did not receive a ballot they may not vote because they did not request one 15 days prior to the election; or 3) they erroneously believe that they must mail their ballot back 7 days prior to the election when, in fact, they can vote by electronic means without using the Postal Service.  *See* Choate Dec. ¶ 33.

9

By interfering with the rights of overseas and uniformed services voters to cast their ballots as allowed by the Overseas Voters Act, the Postal Service is violating that Act. Plaintiffs are likely to succeed on their claims under the Act. *See, e.g.*, *United States v. Georgia*, 892 F. Supp. 2d 1367, 1371 (N.D. Ga. 2012) (granting preliminary injunction under the Act to protect rights of overseas voters to vote by absentee ballot).

## II. Colorado Will Suffer Irreparable Harm If These Notices Are Delivered to Colorado Households.

Temporary injunctive relief is appropriate because Colorado has demonstrated that "irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Irreparable injury exists where, as here, the Court will be unable to remedy the harm following a final determination on the merits. *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016).

"When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Id.* at 752 (quoting *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001)). This is particularly true in the electoral context, where interference with the democratic process is precisely the type of irreparable harm that calls for preliminary relief. *See, e.g., Fish*, 840 F.3d at 752 (holding that interference with the right to vote weighs heavily in favor of irreparable harm); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("A restriction on the fundamental right to vote . . . constitutes irreparable injury");

10

*Garbett v. Herbert*, No. 2:20-cv-245-RJS, 2020 WL 2064101, at \*15 (D. Utah April 29, 2020) (holding that the potential of being "unjustifiably shut out from an election constitutes irreparable injury"); *Fleming v. Gutierrez*, No. 13–CV-222 WJ/RHS, 2014 WL 12650657, at \*10 (D.N.M. Sept. 12, 2014) (holding that plaintiffs "would certainly be irreparably harmed if they are unable to vote because of another mismanagement of the election").

If Defendants distribute these misleading Notices to Colorado voters, no adequate remedy exists to undo or even mitigate Colorado's injury. First, the harm caused to Colorado and its voters includes the violation of constitutional rights. Specifically, Colorado's right to determine the time, place, and manner of its elections, U.S. Const. art. I, § 4, the rights reserved to Colorado by the Tenth Amendment, and Colorado voters' fundamental right to have their votes counted, *see Reynolds v. Sims*, 377 U.S. 533, 534, (1964). This is sufficient to demonstrate irreparable harm. *See, e.g.*, *Fish*, 840 F.3d at 752.

Second, Colorado's injury will occur as soon as the Notices are distributed to Colorado voters. The primary injury caused by the Notices lies in the confusion they will sow amongst active, registered Colorado voters. Choate Dec. ¶ 29. Those voters have repeatedly—and correctly—been told there is no need to request a ballot. If distributed, the Notices would send a contradictory message, leaving voters to wonder whether state law has changed, whether their ballot is being withheld, or

11

whether their registration has somehow lapsed. Choate Dec. ¶¶ 30–31. In other words, the Notices, which postal officials recognize as misstating Colorado law and election procedures, Choate Dec. ¶¶ 26–28, will immediately and irrevocably sow confusion throughout Colorado.

Nor could a subsequent communication remedy the harm. The purpose of preliminary relief is to "preserve the status quo between the parties pending a final determination on the merits." *City P'ship Co. v. IR-TCI Partners V, L.P.*, 252 F. Supp. 2d 1114, 1118 (D. Colo. 2003). Here, thanks to extensive communications from Colorado elections officials—not to mention several years' worth of experience with mail-in ballots—the "status quo" encompasses relatively low levels of voter confusion regarding Colorado's voting procedures. Introducing doubt into that scheme, as the Notices would do, cannot be remedied through subsequent communications. Not only might these corrective measures fail to reach voters, they are likely to only cause even more confusion, leaving voters unable to decide which of many messages to believe. *See* Choate Dec. ¶ 27.

Third, the confusion sown by the Notices is likely to significantly affect Colorado election officials. According to Colorado's Director of Elections, the Notices are likely to necessitate significant remedial outreach by and to State and county election officials. Choate Dec. ¶ 35. This attempt at damage control would

needlessly occupy valuable resources during a time when these officials are already preparing for an unprecedented election.

To Plaintiffs' knowledge, the majority of these Notices destined for Colorado currently sit at the Denver General Mail Facility, ready to be distributed. Choate Dec. ¶ 28. Once distribution begins, the "horse will be out of the barn," and the substantial confusion caused by their blatantly misleading or false messages will be irreversible. Preliminary relief is necessary to prevent this irreparable harm.

### III. The Public Interest in Preventing Misleading Information from Disenfranchising Voters Outweighs the Administrative Burdens a TRO Will Impose on Defendants.

Where the government is a party to the litigation, the final two prongs of the preliminary relief analysis merge into a single inquiry. *See Nken*, 556 U.S. at 435 (2009). Here, having demonstrated irreparable harm, that inquiry inescapably weighs in Colorado's favor. "It is always in the public interest to prevent a violation of a party's constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1147 (10th Cir. 2013) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1131–32 (10th Cir. 2012)). Meanwhile, Defendants have no significant interests in distributing these misleading Notices—and even if they did, those interests would be subordinate to the fundamental constitutional rights of Colorado and its voters. Defendants did not distribute such Notices before Colorado's primary election

13

earlier this year; nor have they distributed these mailings before general elections in prior years.

To be sure, removing the Notices from circulation on short notice will impose administrative burdens. But compared to the potential disenfranchisement of registered voters, such "light administrative burdens" are insufficient to tilt the balance of the equities in Defendants' favor. *See Fish*, 840 F.3d at 755 (holding that "light administrative burdens" imposed by preliminary injunction are outweighed by potential disenfranchisement of eligible voters). Plaintiffs understand that most of the Notices remain on a pallet in a distribution facility, making removal of most Notices from the mail relatively easy. But regardless of where the Notices are in the mail stream, the harm Colorado stands to suffer as a result of these misleading Notices exceeds what Defendants could possibly suffer from a TRO. *See* Choate Dec. ¶ 35 (describing likely administrative burden of responding to voter confusion sown by the Notices).  For these reasons, the public interest is best served by preserving the status quo.

## CONCLUSION

Because distributing these Notices violates the Constitution and federal law and will harm Colorado and its residents, Plaintiffs respectfully request the Court issue a Temporary Restraining Order prohibiting Defendants from delivering the Notices to any Colorado household.

14

RESPECTFULLY SUBMITTED this 12th day of September, 2020.


PHILIP J. WEISER
Attorney General


s/Eric Olson
_____
ERIC OLSON*
Solicitor General
LEEANN MORRILL*
First Assistant Attorney General
EMILY BUCKLEY
Assistant Attorney General
MICHAEL KOTLARCZYK
Assistant Attorney General
PETER G. BAUMANN
Campaign Finance Fellow

Attorneys for Plaintiffs

Ralph L. Carr Colorado Judicial Center
1300 Broadway,  Floor
Denver, Colorado  80203
Telephone:  303-892-7400


E-Mail:   eric.olson@coag.gov
              Leeann.morrill@coag.gov
              Emily.buckley@coag.gov
              Mike.kotlarczyk@coag.gov
              Peter.baumann@coag.gov


*Counsel of Record

15

**<u>CERTIFICATE OF SERVICE</u>**

I certify that I served the foregoing MOTION FOR A TEMPORARY

RESTRAINING ORDER upon all parties and counsel who have appeared herein by

e-filing with the CM/ECF system maintained by the Court on September 12, 2020.

*s/ Emily Buckley*
Emily Buckley
