IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02768-WJM

STATE OF COLORADO and
SECRETARY OF STATE JENA GRISWOLD

    Plaintiffs,

v.

LOUIS DEJOY, in his official capacity as Postmaster General;
UNITED STATES POSTAL SERVICE;
SAMARN S. REED, in his official capacity as the Denver, Colorado Postmaster; and
CHRIS J. YAZZIE, in his official capacity as the Albuquerque, New Mexico Postmaster,

    Defendants.

## RESPONSE TO DEFENDANTS' MOTION FOR RECONSIDERATION

Defendants do not claim they made any effort to ensure these Official Notices accurately stated Colorado law, or that they made any effort to consult with the State—which has the Constitutional authority to set the "Times, Places and Manner of holding Elections." They do not dispute that they assured Colorado that most of the Notices had not been delivered on Friday. And they admit that tens of thousands of Official Notices await delivery, and that, though challenging, they can prevent the delivery of most of these remaining Notices.

Instead, they claim that because they delivered many of these Notices earlier than Colorado understood them to (or than their statements to the press indicated), Plaintiffs sued too late. And they raise sweeping legal claims that states have no

ability to protect their citizens and their state from federal government election interference. But the Constitution allocates authority to the states, and the states can protect their elections from federal interference.

As the Court recognized, the harm created by Defendants' actions is substantial and irreparable. Defendants have provided no basis to disturb this Court's Temporary Restraining Order.

But Defendants have raised a number of issues that will require additional corrective action. What additional corrective action beyond that proposed by Defendants to take in response to Defendants delivery of Notices late this week, including many after the suit was filed, can be addressed at the Preliminary Injunction hearing this Friday.

## ARGUMENT

### I.  Plaintiffs Will Likely Succeed on Their Claims

Defendants' objections to the Court's opinion do not demonstrate any error in the Court's analysis. Defendants point to no authority applying the *Mellon* bar in claims relating to assertion of the constitutional right to vote and, regardless, Colorado has separate quasi-sovereign interests in its own state elections that the *Mellon* bar does not touch. The Elections Clause provides an affirmative allocation of authority by the Constitution to the states (and, in limited circumstances, Congress), not the Postal Service to set procedures regarding elections.

### A. *Mellon* Does Not Bar Plaintiffs Claims

Defendants claim that regardless of what the federal government does to interfere with Colorado's election system, Colorado has no remedy under *Massachusetts v. Mellon*, 262 U.S. 447 (1923). ECF No. 12, pp. 10–11. This claim fails for three separate reasons.

*First*, this suit is not just on behalf of Colorado voters, but also asserts Colorado's separate interest in conducting its own elections with integrity free from false federal government interference. Plaintiffs noted in their Complaint the separate Constitutional interest of the state in these elections: "Defendants' misstatements interfere with Colorado's power to regulate elections and therefore deprives Colorado's constitutional rights to regulate state elections and determine the manner in which state officers will be chosen." ECF No. 1 ¶24. *Mellon* provides no barrier whatsoever to this separate state assertion of authority.

As set forth in the attached declaration of Colorado's Secretary of State Jena Griswold, the November election in Colorado has eleven statewide ballot measures and numerous municipal elections and ballot measures, in addition to the federal elections. Ex. A at ¶ 22 (noting measures include, among others, "whether to establish a paid family and medical leave program," and "whether to change the

3

means by which property taxes are assessed in the state.")[1] Colorado has standing to prevent federal interference in these statewide elections that seek to amend the Colorado Constitution.

*Second*, Defendants point to no authority where the *Mellon* bar has been used to foreclose state efforts to protect the constitutional integrity of elections—and state citizens' rights to participate in such elections—against federal government interference. *Mellon* itself addressed whether appropriations were state or federal in nature and expressly left open the possibility of state standing in situations such as these: "We need not go so far as to say that a state may never intervene by suit to protect its citizens against any form of enforcement of unconstitutional acts of Congress; but we are clear that the right to do so does not arise here." *Id.* at 485. And two other cases relied on by Defendants, *Massachusetts v. EPA*, 549 U.S. 497 (2007), and *Government of Manitoba v. Bernhardt*, 823 F. 3d 173 (D.C. Cir. 2019), similarly address whether states have statutory standing to sue the federal government.

*Third*, *Massachusetts v. EPA* actually found standing for the state to sue the federal government over *Mellon* bar objections. 549 U.S. at 520, n.17. It noted the

---

[1] This declaration was prepared in a separate lawsuit by Colorado and other states against the Postal Service relating to its mail delays and impact on the upcoming election. A preliminary injunction hearing is set for that case on September 17, 2020. In the interests of time, that declaration is used here.

4

"the long development of cases permitting States to litigate as *parens patriae* to protect quasi-sovereign interests—i.e., public or governmental interests that concern the state as a whole." *Id.* (citations and quotation omitted). And in discussing the dissent's objection—that the *Mellon* bar should be broadly applied— it stated that "*Mellon* itself disavowed any such broad reading [barring a state's ability to assert a quasi-sovereign interest against the Federal Government] when it noted that the Court had been 'called upon to adjudicate, not rights of person or property, not rights of dominion over physical domain, and not quasi-sovereign rights actually invaded or threatened.'" *Id.* (quoting *Mellon*, 262 U.S. at 484-485). Finally, the Court noted the important distinction that Defendants ignore here: "there is a critical difference between allowing a State "to protect her citizens from the operation of federal statutes" (which is what Mellon prohibits) and allowing a State to assert its rights under federal law (which it has standing to do)." *Id.*

Colorado has a quasi-sovereign interest in ensuring that the entire election that it is administering in November is free from federal interference and consistent with its constitutional authority, under all of the constitutional provisions discussed in the Complaint. Even if the *Mellon* bar is broadly construed—which it should not be given the important constitutional rights at issue—the *Mellon* bar does not prevent Colorado from vindicating its separate quasi-sovereign interest in the

5

integrity of its own state elections, including statewide ballot measures, under its Tenth Amendment authority.

### B. The Elections Clause Binds the Postal Service and the State May Sue to Halt Unconstitutional Conduct

Defendants claim that the Elections Clause's allocation of authority to the States does not give the States any enforceable remedy because of the Supremacy Clause. ECF No. 12, p. 12 ("The Elections Clause . . . does not override federal supremacy with respect to elections.") Not so.

First, the Constitution makes clear that the only federal body with any supervisory authority over the way in which States establish the "Times, Places and Manner of holding Elections" is Congress, not the Postal Service. U.S. Const. Art I, § 4. Absent from Defendants' motion is any claim that the Postal Service's effort to send this Official Notice falls under this Congressional authority. Nor could they make such a claim, as the Postal Service is an agency in the Executive Branch.

Second, the Constitution allocates to the States the ability to set the "Times, Places and Manner" of holding elections. Defendants claim that this explicit allocation of authority to the states cannot operate as a limit on federal action—and, therefore, no matter how outrageous federal interference may be, States may never sue to protect their constitutionally allocated authority. This claim disrespects the basic allocation of authority of our republic. The Federal Government must honor

the constitutional allocation of authority and when it does not do so, a state may sue. *See, e.g.*, *State of Colorado v. U.S. Dept. of Justice*, 2020 WL 1955475, at *7-20, No. 19-cv-00736-JLK (D. Colo. Apr. 23, 2020) (finding conduct by executive branch agency unconstitutional in lawsuit brought by state and issuing injunction).

## II. Plaintiffs Will Suffer Irreparable Harm If These Notices are Distributed, and the Status Quo Involves <u>Not</u> Delivering Any Undelivered Notices

As the Court correctly held, Colorado will suffer irreparable harm if the Notices are delivered to Colorado households and no adequate remedy exists to undo or mitigate Colorado's injury. ECF No. 11, p. 4. Contrary to Defendants' argument, the harm is not mere uncertainty. *See* ECF No. 12, p. 14. Instead, "the harm caused to Colorado and its residents implicate basic constitutional rights, namely, Colorado's right to determine the time, place and manner of its elections, as well as Colorado voters' fundamental right to have their votes counted," as the Court determined. ECF No. 11, pp. 4–5. Harm to these rights is sufficient to demonstrate irreparable harm: "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016) (quoting *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001)); *see also* ECF No. 11, pp. 4–5.

Defendants now contend that there is no irreparable harm or injury because most of the Notices have already been delivered. Defendants' statements here

directly contradict their earlier statements to the public and Plaintiffs as to how many Notices have been delivered.² In effect, it appears that Defendants misrepresented to the public and Plaintiffs the status of delivery of the Notices—and continued delivery of the Notices—even after they were informed the Notices contained false and misleading information about the manner of Colorado's elections. *Compare* ECF No. 8-1, pp. 6–8 *with* ECF No. 12-2, pp. 6–10; *see also* footnote 1, below (statement of David Rupert, postal service spokesman to *Denver Post*) and discussion in Section III, below. But Defendants also concede that other Notices, in various stages of processing, have *not* been delivered to Coloradans. ECF No. 12, p. 2. Because a temporary restraining order could prevent delivery of the remaining Notices, the Court's order is necessary to prevent further harm to Coloradans.

And Defendants' own conduct in delivering most of the Official Notices after being put on notice on Thursday that Colorado had objections to the misstatements

---

² *See, e.g.*, ECF No. 8-1, pp. 6–8; Sam Tabachnik, *Federal judge blocks USPS from sending mailers containing incorrect voting information to Coloradans*, DENVER POST, Sept. 12, 2020, https://www.denverpost.com/2020/09/12/jena-griswold-usps-lawsuit-election-misinformation/ ("David Rupert, a postal service spokesman, told The Denver Post that a handful of Colorado communities — totaling in the thousands of households — received the postcard Thursday and Friday, with the rest set to receive it in the coming days.")

in the Notices does not, as Defendants now claim, require Plaintiffs to carry a heightened legal burden here. ECF No. 12, pp. 9–10. The challenge of removing these Notices from the mail stream arises because of Defendants' own conduct in continuing to place them in the mail stream after being put on notice, and being told on Friday that litigation was imminent.

While it may be difficult for Defendants to stop mailing of the Notices at this stage, that inconvenience to Defendants does not excuse further irreparable injury to Coloradans' constitutional rights. Defendants were informed of the considerable injury the Notices would inflict on Coloradans days earlier. Their late claim that further harm to Coloradans' constitutional rights would be onerous to prevent is plainly inadequate. If Defendants distribute additional misleading Notices to Colorado voters, no adequate remedy exists to undo or even mitigate Colorado's injury. ECF No. 11, pp. 4–5.

### III. The Public Interest and Balance of the Equities Favors a Restraining Order, Particularly Given Defendants' Admission that It is Possible to Prevent Delivery of these Notices.

In a variety of election contexts, federal courts have recognized "the important state interest of avoiding 'confusion, deception, and even frustration of the democratic process.'" *Arutnoff v. Okla. State Election Bd.*, 687 F.2d 1375, 1378 (10th Cir. 1982) (quoting *Jenness v. Fortson*, 403 U.S. 431, 442 (1971) (both denying challenges to states' ballot access requirements). Indeed, the Tenth Circuit recently

upheld a state's interest in "managing elections in a controlled manner [and] increasing voter participation" as "constitut[ing] the very backbone of our constitutional scheme—the right of the people to cast a meaningful ballot." *Utah Republican Party v. Cox*, 892 P.3d 1066, 1084 (10th Cir. 2018) (quotation omitted). These same interests animate Colorado's suit here. Preventing Defendants from engaging in further acts to undermine these interests is essential to safeguard the public interest in Coloradans' "right to cast a meaningful ballot," which is "one of the rights through which all other rights are protected." *Utah Republican Party*, 892 P.3d at 1084.

Defendants' assertion that "the Postal Service has a legitimate goal in using these postcards to encourage advance planning for those who plan to vote by mail," *Motion* at 15, is refuted by their public admission that the official notice contains inaccurate information. According to a statement made by spokesman James Boxrud on September 12, 2020, "The Postal Service recognizes that not every state requires a voter to request a ballot in order to obtain one by mail for the November election." https://denver.cbslocal.com/2020/09/12/jena-griswold-usps-postcard/. As such, the public interest unquestionably favors maintaining the temporary restraining order and denying the motion to reconsider. And because the balance of equities and the public interest, "merge when the Government is the opposing party," *Nken v. Holder*, 556 U.S. 418, 435 (2009), so too does the balance of equities.

Defendants' assertion that "the TRO is of limited public value, as most of the postcards were already delivered" is belied by the statements of their own declarant. *See* Graves Decl. at ¶ 25 (admitting that 25% of the official notices have not yet been dispatched for delivery to Colorado households); ¶ 24 (admitting that only 62.4% of the official notices dispatched for delivery had been processed by noon on Saturday, September 12th). They also are inconsistent with representations made by other Postal Service employees who oversee the Western Region, which includes Colorado and New Mexico. *See* Choate Decl. at ¶ 28 (Public Information Officer David Rupert represented on Friday, September 11th that "most of Colorado official notices were still on a pallet in the Denver General Mail Facility and only a small number addressed to households in Colorado Springs were in the mail stream.").

Indeed, the following text exchange between Judd Choate, Director of Elections for the Colorado Secretary of State, and David Rupert, Postal Service Public Information Officer, on Friday afternoon and evening makes clear that Postal Service representatives had communicated to Colorado that delivery to all but Colorado Springs (referred to as COS in the text) had been halted as of Friday night, and that the Notices contained misstatements of Colorado law:

11



Nor is it impossible for Defendants to halt the damage they are causing to Coloradans' right to cast a meaningful ballot. Rather, it will take time and effort, but it is doable. *See* Graves Decl. at ¶¶ 26-28. The public interest and balance of equities weigh in favor of making Defendants shoulder the burden of unwinding their concerted attack on Colorado's mail voting system.

12

### IV. Defendants Do Not Address Plaintiffs' Statutory Grounds for Preliminary Relief, Which Provide Additional Grounds for Maintaining the Court's Order.

Defendants' request for reconsideration does not substantively address Colorado's statutory claims. See ECF No. 11, p. 13 n.6. In connection with their claims under 52 U.S.C. §§ 10101(b) & 20510(b), Plaintiffs demonstrated that due to the Notices' false and misleading statements, ECF No. 11, p. 3, Colorado voters who would otherwise vote under the guidance of Colorado election officials will be confused by the false statements by the Postal Service and will not vote in the upcoming elections, ECF No. 8, pp. 7–8. Contrary to Defendants' cursory argument, ECF No. 12, n.6, § 20510(b), provides a private right of action to any person "aggrieved by a violation of [Chapter 52 of the US Code]" and does not exempt the federal government from suit. And as set forth in Plaintiffs' motion, the notice period under § 20510(b) period should not apply where, as here, the aggrieved person is the chief election official of the State and the persons who allegedly are interfering with the right to vote are federal officials and the State official is endeavoring to protect the State and its voters from imminent harm caused by federal officials. ECF No. 8, p. 8 n.1.

Plaintiffs have also shown a substantial likelihood of success under the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20302 ("the Overseas Voting Act"), which guarantees absent uniformed services voters and

13

overseas voters the right to vote by absentee ballot in general, special, primary, and runoff elections for federal office. 52 U.S.C. § 20302(a)(1). Secretary Griswold is "responsible for implementing . . . the state's responsibilities under the [Overseas Voting Act.]" Colo. Rev. Stat. § 1-8.3-104(1). Among other things, the Overseas Voting Act permits uniformed and overseas voters to vote by absentee ballot and to receive and return their ballots by electronic means. 52 U.S.C. § 20302(e); C.R.S. § 1-8.3-113. As set forth in Plaintiffs' motion, the Notices will cause confusion and potential disenfranchisement of voters who seek to vote under Overseas Voting Act. ECF No. 8, pp. 9–10. In light of Colorado's and Secretary Griswold's responsibilities in connection with the Act, where the federal government's actions plainly interfere with such duties, suit against the federal government is proper. *See also* § 20510(b) (providing a private right of action to any person "aggrieved by a violation of [Chapter 52 of the US Code].").

## CONCLUSION

Because distributing these Notices violates the Constitution and federal law and will harm Colorado and its residents, Plaintiffs respectfully request the Court refrain from reconsidering its Temporary Restraining Order.

RESPECTFULLY SUBMITTED this 13th day of September, 2020.

                PHILIP J. WEISER
                Attorney General

                s/Eric Olson
                ERIC OLSON*
                Solicitor General
                LEEANN MORRILL*
                First Assistant Attorney General
                EMILY BUCKLEY*
                Assistant Attorney General
                MICHAEL KOTLARCZYK*
                Assistant Attorney General
                PETER G. BAUMANN*
                Campaign Finance Fellow

                Attorneys for Plaintiffs

                Ralph L. Carr Colorado Judicial Center
                1300 Broadway, 10th Floor
                Denver, Colorado 80203
                Telephone: (720) 508-6000

                E-Mail:   eric.olson@coag.gov
                             Leeann.morrill@coag.gov
                             Emily.buckley@coag.gov
                             Mike.kotlarczyk@coag.gov
                             Peter.baumann@coag.gov

                *Counsel of Record

## **CERTIFICATE OF SERVICE**

I certify that I caused the foregoing MOTION FOR A TEMPORARY RESTRAINING ORDER to be served upon all parties herein by e-mail this 13th day of September, 2020 addressed as follows:

Kevin Traskos
Lauren Marie Dickey
Assistant United States Attorney
United States Attorney's Office for the District of Colorado
1801 California St #1600
Denver, CO 80202
Kevin.Traskos@usdog.gov
Lauren.Dickey2@usdog.gov


        s/ LeeAnn Morrill
        ***LeeAnn Morrill***