**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-02768-WJM-STV

STATE OF COLORADO, and
JENA GRISWOLD, Colorado Secretary of State,

      Plaintiffs,

v.

LOUIS DEJOY, in his official capacity as Postmaster General,
UNITED STATES POSTAL SERVICE,
SAMARN S. REED, in his official capacity as Denver, Colorado Postmaster, and
CHRIS J. YAZZIE, in his official capacity as Albuquerque, New Mexico Postmaster,

      Defendants.

---

**DEFENDANTS' REPY IN SUPPORT OF EXPEDITED MOTION FOR IMMEDIATE
RECONSIDERATION OF TEMPORARY RESTRAINING ORDER**

---

Plaintiffs' Response (ECF No. 13) to Defendant's Motion for Reconsideration (ECF No. 12) fails to show that Plaintiff's claims are likely to succeed. It fails to even show that Plaintiffs even have claims to assert. In addition, Defendants explain briefly below that they acted properly both in mailing the postcards, then in attempting to comply with the Court's Temporary Restraining Order (ECF No. 12).

Defendants note that Plaintiffs ask, in their response brief (in violation of D.C.COLO.LCivR 7.1(d)), for additional relief, beyond what was requested in their Complaint (see ECF No. 1 at 15) or Motion for TRO (*see* ECF No. 8 at 14), which sought only a halt on distribution. This request for relief thus will not be addressed here.

I.       **Plaintiffs have not shown that they are likely to succeed on their claims**

Plaintiffs incorrectly suggest that Defendants argue that States have no authority over elections.  Defendants make no such argument.  But States do not have freestanding authority to assert claims.  For example, state legislatures may enact legislation, as the Elections Clause permits them to do.  But Plaintiffs do not rely on any state legislation as a basis for their claim.

Under our constitutional system, States can legislate across innumerable areas. And elections is one such area, as the Elections Clause confirms. But the constitutional authority of states to legislate is not is not the same as a grant of authority to sue the federal government.  We are a nation of laws, and there must be a federal law or legislation that provides a party with an express right to sue another party and obtain relief.

Plaintiffs have not pointed to any federal constitutional provision or legislation that permits them to sue here. They have pointed to no case that has allowed similar relief here. The absence of such authority confirms that the relief they seek here is wholly unprecedented. And the reason it is unprecedented is the absence of a statute that allows the state to sue the federal government here to obtain the relief it seeks.

Indeed, Plaintiffs appear to take the sweeping view that states can sue federal government over any dispute.  But this is no more correct than the idea that the federal government can sue state over any disagreement.  Rather, under our constitutional scheme, states cannot regulate the federal government.

The Supreme Court has recognized "the rule that federal agencies are subject to state regulation only when and to the extent Congress has clearly expressed such a purpose." *EPA v. Calif. ex rel. State Water Resources Control Bd.*, 426 U.S. 200, 217 (1976).  *See also Goodyear*

*Atomic Corp. v. Miller*, 486 U.S. 174, 181 (1988) (observing that "without clear congressional authorization, the federal function must be left free of [state] regulation") (internal quotation marks omitted) (quoting *Hancock v. Train*, 426 U.S. 167, 179 (1976)); *Penn Dairies, Inc. v. Milk Control Comm'n*, 318 U.S. 261, 269 (1943) (recognizing that "in the absence of congressional consent, there is an implied constitutional immunity of the national government from state taxation and from state regulation of the performance, by federal officers and agencies, of governmental functions").

This principle dates back to *McCulloch v. Maryland*, 17 U.S. 316 (1819), where the Supreme Court invalidated a state tax on the Second Bank of the United States; as Chief Justice Marshall famously explained in invalidating the state's attempt to exercise its power over a federal function, "the power to tax involves the power to destroy."  *Id*. at 347.

As authority for suing the federal government here, Plaintiffs cite (ECF No. 14 at 7) *State of Colorado v. U.S. Dep't of Justice*, ___ F. Supp. 3d ___, 2020 WL 1955474 (Apr. 23, 2020), where the court challenged the attempt by the Executive Branch to impose limits on grants provided to the state.  But that case does not help Plaintiffs argument.  There, the court ruled that "no provision in the statute expressly authorizes the Attorney General to impose the challenged condition."  *Id*. at *8.  It next looked to the Tenth Amendment, which it observes imposes an "anticommandeering doctrine" that "'simply represents the recognition that the Constitution purposefully withheld from Congress the power to issue orders directly to the States,'" *id*. at *17 (quoting *Murphy v. Nat'l College Athletic Ass'n*, ___ U.S. ___, 138 S. Ct. 1461, 1475-76 (2018)).  The district court then explained that because it had found no basis in the federal statute

for the Executive Branch's action, it was declining to determine whether the Tenth Amendment

has been violated.    2020 WL 1955474, *20.

### A.    The Elections Clause claim lacks support

Plaintiffs rely on the Elections Clause, but as Defendants have pointed out, that Clause

does not prevent federal action.  It simply provides that states can regulate the time, place, and

manner of elections, but subject to federal override.

The Postal Service, too, derives its authority from the Constitution and statute.  *See* U.S.

Const. art. I, § 8, cl. 7; 39 U.S.C. § 101 *et seq.*  Under federal statutory authority, it may make

plans and take action to encourage postal customers to plan ahead for important mailings. *See,*

*e.g*., 39 U.S.C. § 403(a) (providing that the Postal Service "shall plan, develop, promote and

provide … efficient postal services").  Plaintiffs thus do not argue that the USPS was outside its

authority in issue mailers to its postal customers.  And Plaintiffs do not argue that the USPS has

set the rules for the state election.  The postcards advise postal customers to plan ahead, but warn

customers that state laws vary and that they should consult those laws.

Plaintiff provide no authority, from any source, that Elections Clause on its own,

empowers a state to sue whenever state believes some conduct might result in voter confusion.

Rather, as explained above, the intergovernmental immunity doctrine applies.  To overcome that

immunity, Plaintiffs mist point to a statute, as discussed below.

### B.    Plaintiffs' generalized voting rights claim fails

For Claim III, Plaintiffs rely on citizens' rights to vote, and on their sovereign interest.

First, they claim that the State has a separate, sovereign interest in voting.  But they cite no specific source of law other than the State's interest in elections.  An independent interest in an area cannot provide the basis for a lawsuit.

Second, they say that Postal Service cites no example where the Mellon bar has been applied in this context. ECF No. 14 at 4. But it is Plaintiffs' burden to identify some precedent that allows them to proceed.  Absent that, it is unremarkable that there are no cases where defenses have been raised.

Third, Plaintiffs suggest that they can assert rights of citizens, despite *Massachusetts v. Mellon*, 262 U.S. 44 (1993).  ECF No. 4.  They argue that the *Mellon* bar on states suing the federal government under a *parens patriae* theory should not be applied here, and relies on *Massachusetts v. EPA,* 549 U.S. 497 (2007).

Not so.  In that case, "Massachusetts did not sue in its parens patriae capacity," but asserted its own rights as a landowner under the Clean Air Act, and so "*Massachusetts v. EPA* is not a *parens patriae* case."  *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 182 (D.C. Cir. 2019). The *Manitoba* case clarified that in *Massachusetts*, the Supreme Court had simply observed that while *Mellon* bars suits by a state against the federal government as parens patriae to assert rights of its citizens, *Mellon* does not bar a state from asserting "based on 'its rights under federal law' (not a *parens patriae* case at all)."  *Id*. (quoting *Massachusetts*, 549 U.S. at 520 n.17)).

In other words, the *Mellon* bar here still prevents the State from asserting a rights of its (and the United States') citizens, but *Massachusetts* makes clear that the State can still assert any rights it, as a sovereign, may have under federal law.  And that—a specific right of the State to sue under federal law—is what Plaintiffs must point to here.  Besides the Elections Clause (and

the duplicative Tenth Amendment claim), the only federal sources of law Plaintiffs point to are those in two federal statutes.  As explained below, those statutes do not provide the State with an action here.

### C.        Plaintiffs' statutory claims fail for numerous reasons.

The Postal Service is part of the federal government.  It may be sued under various under statutes, *see* 39 U.S.C. 410 ("Application of other laws"), but the statute Plaintiffs cite are not listed in that provision.

Because the Postal Service is part of the federal government, Plaintiffs must make some showing that the statutes they rely on apply to the Postal Service.  For example, in *U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736 (2004), the Supreme Court held that the Postal Service could not be sued under the Sherman Act because Congress did not make clear that the Act applies to the Postal Service.  It observed that the Sherman Act imposes liability on persons and that the Postal Service is part of the federal government and is *not* "a person separate from the United States itself," and found "no express statement from Congress that the Postal Service can be sued for antitrust violations." *Id*. at 746.

As explained below, the two claims Plaintiffs assert here, under Claims under Title 52 of the U.S. Code do not apply.

### 1.        The National Voting Rights Act claim fails

Plaintiffs' Claim IV is brought under the National Voter Registration Act 52 U.S.C. § 20510-20511.  But the provision for a right of action on which Plaintiffs rely is limited to violation of this "chapter,"— § 20510(b), thus Title 52, Chapter 205, §§ 20501-11, not all of title 52.  Plaintiffs point to no violation of that chapter.

Rather, Plaintiffs point to a provision in another chapter of Title 52, which provides that "No person" may "intimidate, threaten, coerce" or attempt to do so.  52 U.S.C. § § 10101(b). But for violations of that provision, Comgress provided that the U.S. Attorney General may bring action for relief.  § 10101(c).

Also, Plaintiff have pointed to no conduct violating § 10101(b).  They have pointed to no evidence of any attempt by USPS to intimidate, threat, or coerce another.  Any in any event, the § 10101(b) prohibits conduct by a person, and the USPS is not a person under federal law.  See 1 U.S.C. § 1 (defining person).

Also, under the NVRA, the State can't sue.  The NVRA permits a "person" can bring action to enforce the chapter. 20510(b).  But the State, too, is not a "person."  1 U.S.C. § 1 (defining person).  And even if the State were a person, it could not sue under § 20510.  That provision permits the U.S. Attorney General to bring immediate relief.  § 20510(a). But other parties that wish to sue must wait for the expiration of a statutory waiting period, and Congress provided no exceptions.  § 20510(b).

### 2.       The UOVACA claim also fails

Plaintiffs other statutory claim, Claim V, is brought under the Uniformed and Overseas Citizens Absentee Voting Act of 1986 (UOCAVA), codified at 52 U.S.C. § 20301-20311.  For this claim, again, the State relies on 52 U.S.C. § 20510.  But as discussed above, that right of action is limited to Chapter 205 of the Act, not the whole title.  And it is limited to a suit by a person, which Plaintiffs are not under the U.S. Code.  And again, there is a waiting period.  § 20510(b).

Moreover, Plaintiffs identify no violation of UOCAVA.  They simply note that it prescribes state responsibilities.  § 20302.

**II.       Several of Plaintiffs' other contentions in the response are incorrect.**

First, the USPS did not misrepresent the status of the delivery of the postcards. At the upcoming hearing on this matter, Defendants plan to provide the Court with additional detail regarding the USPS's response to Plaintiffs' concerns. Based on Defendants' investigation to date, it appears that the postcards that were delivered on Saturday, October 12, had already been fed into the system for processing by 1pm on Friday, September 11, and thus had already been comingled with other mail and scheduled for delivery. It appears, however, that no new postcards were fed into the system on Friday evening.

Second, Defendants dispute Plaintiffs' allegation that a USPS employee admitted the postcards were incorrect. *See, e.g.,* Ex. 1, Glass Decl. Rather, this employee advised Plaintiffs that because the Postal Service had issued the mailing to all 50 states, the messaging was intentionally designed to be generic advice, and that the very first recommended step was for voters to consult with their local election authorities. The USPS employee further stated that he did *not* believe the mailing was misleading, and that for Colorado voters, the recommendation to request a mail-in ballot would simply be unnecessary.

Finally, the USPS notes that it has gone to considerable lengths to comply with the Court's order. *See* Ex. 1. Immediately upon receiving the Court's order, the USPS instituted a number of processes in order to comply with the order. USPS employees went into the Denver plant early on the morning of Sunday, October 13, 2020, and began attempting to manually extract the postcards from the processing system. This required efforts by nearly 30 USPS

employees over the course of approximately 20 hours, who manually inspected millions of pieces of mail and attempted to identify and removal all postcards from the processing system.

The USPS also issued a directive to all USPS post offices around the State of Colorado advising them that the USPS had been ordered to stop delivery of the postcards. The USPS directed all postal clerks to extract the postcards from the points of distribution within their individual territories, and further directed the individual carriers to extract all postcards from the mail and to not deliver these postcards to USPS customers. The USPS further instructed the clerks to gather and consolidate all individual postcards that they identified and extracted during the course of their mail routes, and to provide those cards to their managers at the conclusion of their routes. All USPS Colorado employees were directed to continue to abide by these instructions until advised otherwise, and currently remain under this directive.

## CONCLUSION

Defendants request that the Court vacate the TRO.

Respectfully submitted this 14th day of September, 2020.

JASON R. DUNN
United States Attorney

s/ *Kevin Traskos*
Kevin T. Traskos
Lauren M. Dickey
Assistant United States Attorneys
1801 California St., Ste 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Email: Kevin.Traskos@usdoj.gov
Attorney for Defendants

9

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on September 13, 2020, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will provide notice to the following parties:

Emily B. Buckley
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720-508-6403
Email: emily.buckley@coag.gov

Eric R. Olson
Colorado Attorney General's Office-Dept. of Law
Ralph Carr Judicial Building
1300 Broadway
10th Floor
Denver, CO 80203
720-508-6548
Email: eric.olson@coag.gov

Michael T. Kotlarczyk
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720-508-6187
Fax: 720-508-6041
Email: mike.kotlarczyk@coag.gov

Peter G. Baumann
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720-508-6152
Email: peter.baumann@coag.gov

LeeAnn Morril
Colorado Attorney General's Office

10

Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720-508-6000
Fax: 720-508-6032
Email: leeann.morrill@coag.gov


s/ *Lauren M. Dickey*
Lauren M. Dickey
United States Attorney's Office